UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NICKOLAS ALONZO VEGA, | No. 2:13-cv-00931-HU |
|     Plaintiff, | **FINDINGS AND RECOMMENDATION** |
|     v. | |
| MR. BELL, et al., | |
|     Defendants. | |

Nickolas Alonzo Vega
SID No. 18764976
Eastern Oregon Correctional Institution
2500 Westgate
Pendleton, OR 97801-9699

    Pro Se Plaintiff

Ellen F. Rosenblum
Attorney General
Andrew D. Hallman
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Facsimile: (503) 947-4794

    Attorneys for Defendants

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

On June 4, 2013, Plaintiff Nickolas Alonzo Vega ("Plaintiff"), an Oregon prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against several officials employed by the Oregon Department of Corrections ("ODOC"). His complaint alleged a First Amendment retaliation claim, an Eighth Amendment failure-to-protect claim, and a Fourteenth Amendment due process claim.[1] Over a month later, on July 11, 2013, Judge Michael Mosman issued a screening order dismissing Plaintiff's Fourteenth Amendment due process claim and seven of the sixteen originally named defendants, pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2). (Order Proceed IFP & Dismiss at 5-6.)

The defendants that survived Judge Mosman's screening order are former Eastern Oregon Correctional Institution ("EOCI") Superintendent Rick Coursey, EOCI Counselor Bell, EOCI Lieutenant Hogeland, "Dr. Kelly," EOCI Assistant Superintendent Ronald Miles, EOCI Corrections Officer Muth, EOCI Sergeant Patterson, EOCI Grievance Coordinator Nina Sobotta, and EOCI Lieutenant Walker (collectively, "Defendants").[2] On January 10, 2014, Defendants filed an unenumerated Federal Rule of Civil Procedure ("Rule") 12(b) motion to dismiss Plaintiff's complaint for failure to

---

[1] Plaintiff's First Amendment retaliation claim and Eight Amendment failure-to-protect claim were pled as a single cause of action. Because they are in fact distinction causes of action, *see Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012); *Ross v. Nooth*, No. 3:09-cv-01530-HU, 2013 WL 2156534, at *5-8 (D. Or. May 16, 2013), the Court will treat them as such throughout this Findings and Recommendation.

[2] The Court will refer to the individual defendants by their last names.

Page 2 - FINDINGS AND RECOMMENDATION

exhaust administrative remedies. After the motion was fully briefed and before the Court issued its Findings and Recommendation, the Ninth Circuit overruled *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), in which they held that a failure to exhaust under the Prison Litigation Reform Act ("PLRA") should be raised by a defendant as an unenumerated Rule 12(b) motion. *See Albino v. Baca*, 747 F.3d 1162, 1166-68 (9th Cir. 2014) (so stating, and indicating that the appropriate procedural device is a motion for summary judgment under Rule 56).

In light of the Ninth Circuit's decision in *Albino*, and because the parties relied on certain materials outside of the pleadings, the Court elected to construe Defendants' unenumerated Rule 12(b) motion to dismiss as a motion for summary judgment brought pursuant to Rule 56. Thus, on April 11, 2014, eight days after the *Albino* decision was issued, the Clerk of Court mailed Plaintiff a summary judgment advice order as well as the Court's formal scheduling order indicating why the motion was construed as a motion for summary judgment, and that Plaintiff had until May 16, 2014 to re-file his opposition brief. Plaintiff did so on April 28, 2014, and Defendants' motion for summary judgment was taken under advisement on May 30, 2014.[3]

As explained in greater detail below, the Court now concludes that Plaintiff has failed to properly exhaust his administrative

---

[3] Plaintiff filed a declaration in support of his April 28, 2014 opposition brief, but he failed to attach the exhibits that are referred to therein. It appears that Plaintiff is referring to the exhibits that were attached to the declaration he filed on February 10, 2014, in support of his original opposition brief. Because the Court assumes Plaintiff intended to incorporate these exhibits by reference, it will consider them here.

Page 3 - FINDINGS AND RECOMMENDATION

remedies with respect to his First Amendment retaliation claim and Eighth Amendment failure-to-protect claim. Accordingly, the Court recommends granting Defendants' motion (Docket No. 25), now construed as a motion for summary judgment, and dismissing Plaintiff's complaint with prejudice.

## I. BACKGROUND

Plaintiff was admitted into the custody of the ODOC on July 26, 2011, and he was housed at EOCI at all times relevant to this case. (Sobotta Decl. ¶ 3.) On February 19, 2013, Plaintiff completed and filed a grievance form addressed to Walker stating:

> After being moved to [housing unit] F3 I became aware of a threat to my personal safety from others housed on [unit] F3. I spoke with Alice DeJongh, Mr. Bell, Ms. Terry, Dr. Kelly, L[ieutenant] Ho[ge]land and L[ieutenant] Walker about the threat, mostly within the past month. I requested to be moved off of [unit] F3, and I wasn't. On [February 12, 2013,] I was attacked on the unit by the person who had threatened me. I went to medical and was told that my nose had been broken. I stayed in the infirmary for a few days and went to the hospital. After that, I was placed on [unit] F2.
>
> . . . .
>
> I would like to remain on [unit] F2 for the time being. I would like the staff members who refused to help me to be held accountable. And I would also like to be compensated for my injuries.

(Vega Decl. [Docket No. 32] Ex. 1 at 1; Sobotta Decl. ¶ 12, Attach. 4.) About a month later, on March 14, 2013, Walker sent a grievance response form to Plaintiff, which stated:

> Mr. Vega I have reviewed [the] grievance you submitted on [February 19, 2013] . . . where you claim your personal safety was threatened from other inmates housed on F3 housing unit. Furthermore you said, 'That you had spoke to me about this threat, mostly within the past month.' In response[,] you were moved from [unit E2] to [unit F3] on [October 24, 2012] per doctor orders that you needed a bottom bunk. Due to bunk availability and compatibility you were assigned to [unit F3]. I have not spoken to you

Page 4 - FINDINGS AND RECOMMENDATION

>   in the past month as you stated; however, I did talk to the housing unit officer at your request that he call me on [October 24, 2012,] the day you moved to [unit] F3 and related the reason why you were moved.

(Vega Decl. Ex. 2 at 2; Sobotta Decl. ¶ 13, Attach. 5.)

Ten days later, on March 24, 2013, Plaintiff completed and filed a grievance appeal form addressed to Assistant Superintendent of Security Lemens, wherein he stated:

>   Whatever the reason I was moved to [unit] F3, my grievance concerns the unilateral assault that occurred about three months after I was moved to [unit] F3. As stated in the original grievance, the issue is that after repeatedly alerting various staff to the threat to my safety on [unit] F3, I was unilaterally assaulted. The threat was ignored, and as a result, I suffered a serious injury—a broken nose (and loss of expensive property). L[ieutenant] Walker's response does not address this issue, which is the basis of my grievance.

(Vega Decl. Ex. 3 at 1; Sobotta Decl. ¶ 14, Attach. 6.) Although Plaintiff's grievance appeal form was "accepted" initially on April 10, 2013, Sobotta ultimately denied the request or "changed the status" upon receiving notice that Plaintiff had filed a tort claim notice with the Oregon Department of Administrative Services ("DAS").[4] (Sobotta Decl. ¶¶ 15-16.) Sobotta did so because OAR 291-109-0140(3)(h) precludes an inmate from grieving a claim or

---

[4] Oregon Administrative Rule ("OAR") 291-109-0170(1) states: "After the [grievance] appeal [form] has been date stamped and logged, the inmate will be issued a return receipt, and the grievance appeal will be forwarded to the functional unit manager having authority to review and resolve the issue. . . . The functional unit manager shall respond to the inmate's grievance appeal within [thirty] calendar days."
   Plaintiff's grievance appeal form is date stamped as received on April 1, 2013. (Vega Decl. Ex. 3 at 1.) Plaintiff received a return receipt on April 10, 2013, the same day Sobotta initially "accepted" the grievance appeal form and forwarded it on to Lemens. (Vega Decl. [Docket No. 43] at 2; Sobotta Decl. ¶ 15, Attach. 7 at 1.)

Page 5 - FINDINGS AND RECOMMENDATION

issue for which the inmate has filed a tort claim notice with the DAS. (Sobotta Decl. ¶ 17, Attach. 9 at 1.)

Plaintiff's tort claim notice is signed and dated March 3, 2013, and EOCI sent a response to the DAS regarding Plaintiff's tort claim notice on April 8, 2013.[5] (Sobotta Decl. ¶ 16, Attach. 8 at 1-5; Vega Decl. Ex. 7 at 1.) Sobotta, however, claims that she was not aware of Plaintiff's tort claim notice when she initially processed Plaintiff's grievance claim (presumably due to poor communication and/or the fact that a copy of the tort claim notice "was not maintained in Plaintiff's grievance file," even though it was sent to the ODOC). (Sobotta Decl. ¶ 16 & n.14.) Sobotta provided Plaintiff with notice of the denial (or change of status) of his grievance appeal on or about May 7, 2013, less than thirty days after the grievance appeal form was initially "accepted" and sent to Lemens. (Sobotta Decl. ¶ 16, Attach. 9 at 1.)

The next day, on May 8, 2013, Plaintiff sent an inmate communication form to EOCI Superintendent Amsberry, stating:

> I request that the attached grievance be allowed to be processed. The reason stated for not allowing it to go forward——'tort claim'——shouldn't stop the issue from being grievable[.] I did submit a 'notice of intent to file a tort claim,' but not a tort claim itself, yet. I would prefer to try to resolve this issue through the DOC's grievance procedures before I consider actually initiating any potential litigation, please.

---

[5] Plaintiff maintains in his declaration that he filed a tort claim notice on or about April 8, 2013, even though the copy of the tort claim notice provided by Defendants' counsel is signed and dated March 3, 2013. (Vega Decl. at 2; Sobotta Decl. Attach. 8 at 5.)

Page 6 - FINDINGS AND RECOMMENDATION

(Vega Decl. Ex. 6 at 1.)  Miles sent Plaintiff a memorandum regarding his grievance on May 9, 2013, wherein he quoted OAR 291-109-0140(3)(h) and stated that Plaintiff's "grievance was appropriately denied" in light of that rule.  (Vega Decl. Ex. 7 at 1.)  Plaintiff filed this § 1983 action against Defendants about a month later, on June 4, 2013.

## II. LEGAL STANDARD

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Summary judgment is not proper if factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id.* at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

Page 7 - FINDINGS AND RECOMMENDATION

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### III. DISCUSSION

Defendants move for summary judgment on Plaintiff's First and Eighth Amendment claims on the ground that he has failed to exhaust his administrative remedies in accordance with the PLRA. Citing the exhibits described in the background section above, Plaintiff asserts that Defendants' motion for summary judgment should be denied because he effectively did everything in his power to exhaust his administrative remedies but was prevented from doing so by Sobotta and EOCI's established grievance procedures. (Pl.'s Opp'n Br. [Docket No. 42] at 5.)

Page 8 - FINDINGS AND RECOMMENDATION

The PLRA "requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). Exhaustion must also be "proper," meaning "a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119. "Prisoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA." *Id*.

It should be noted at the outset that OAR 291-109-0170 indicates that an inmate may appeal the staff member's initial response (Lieutenant Walker in this instance) or any subsequent response from the functional unit manager (the intermediate level of review under EOCI's grievance procedures) by "using the grievance appeal form." Plaintiff utilized the appropriate grievance appeal form when he filed his first appeal on March 24, 2013. After being notified that his first grievance appeal had been denied based on the filing of a "tort claim," however, Plaintiff failed to submit a second appeal to Sobotta "using the grievance appeal form." Instead, he completed an inmate communication form addressed to EOCI Superintendent Amsberry on May 8, 2013.

It should also be noted that OAR 291-109-0170 states that an inmate's first and second "[a]ppeal *must* be submitted to the grievance coordinator together with the original grievance, attachments and staff response(s)." EOCI's inmate grievance

Page 9 - FINDINGS AND RECOMMENDATION

instructions reference the same procedural requirement. (Sobotta Decl. Attach. 3 at 2). Sobotta is the grievance coordinator at EOCI, which is why she received the first grievance appeal form Plaintiff completed on March 24, 2013, and forwarded it to Lemens on April 10, 2013. (Sobotta Decl. ¶ 1, 14-15, Attach. 2 at 5-6; Attach. 7 at 1.) Plaintiff never submitted a second grievance appeal form to Sobotta in accordance with OAR 291-109-0170 or EOCI's inmate grievance instructions; rather, he completed an inmate communication form addressed to EOCI Superintendent Amsberry on May 8, 2013.

Taken together, the above observations demonstrate that Plaintiff's exhaustion was not "proper," in a sense, because he failed to comply with certain procedural rules. There is, however, an unpublished Ninth Circuit opinion that supports Plaintiff's contention that he was not required to exhaust further levels of review. In *White v. Hall*, 384 F. App'x 560 (9th Cir. 2010), the Ninth Circuit reversed a judge of this district under circumstances nearly identical those presented in this case, stating:

> [T]he district court improperly determined that [the inmate] failed to exhaust administrative remedies for his medical care claim. Defendants issued a Returned Grievance Form rejecting [the inmate]'s grievance appeal and stating that '[y]ou can not file a grievance/appeal on an issue that is currently pending a TORT claim.' Because [the inmate] was informed that the appeals process was unavailable to him, he was not required to exhaust further levels of review.

*Id.* at 561; *see also Voth v. Premo*, No. 6:14-CV-00128-KI, 2014 WL 3513372, at *2 (D. Or. July 10, 2014) (rejecting inmate's argument regarding the unavailability of administrative remedies due to his filing of a tort claims notice based in part on the lack of

Page 10 - FINDINGS AND RECOMMENDATION

"binding, published precedent in the Ninth Circuit supporting the proposition" (citing *White*, 384 F. App'x at 561 (unpublished)).[6]

Defendants first attempt to distinguish *White* on the ground that "Plaintiff's grievance was rejected based on a rule not in existence at the time of the exhaustion issue presented in [that case]." (Defs.' Mem. Supp. at 5.) Even taking that at face value, it would be difficult to decipher any meaningful difference between: (1) rejecting an inmate's grievance appeal and stating that "[y]ou can not file a grievance/appeal on an issue that is currently pending a TORT claim" (*White*); and (2) denying an inmate's grievance appeal, listing the reason for denial as "[t]ort claim," and stating that the appeal was "[d]enied per rule, as you have filed a TORT claim relating to the same issue" (the present case).

That is especially true given that the notice of denial that was sent to Plaintiff by Sobotta on or about May 7, 2013, did not

---

[6] Similarly, in *Ippolito v. DeCamp*, No. 3:11-CV-676-PK, 2013 WL 1636078 (D. Or. Mar. 25, 2013), a judge of this district rejected an inmate's argument that further administrative remedies were foreclosed by the filing of his tort claim, noting among other things that the court was "aware of no statutory or case-law support for the proposition that avoiding grievance procedures by filing a notice of tort claim can under any circumstances constitute exhaustion of available administrative remedies." *Id.* at *5, *adopted by* 2013 WL 1628902, at *1 (D. Or. Apr. 16, 2013) (Mosman, J.,).
Several district judges in the Southern District of Indiana have also observed that the filing a tort claim notice "does not substitute for the requirement to exhaust available administrative remedies before bringing a civil rights claim in federal court." *Jennings v. Lemmon*, No. 1:12-cv-01387-SEB-TAB, 2013 WL 5514615, at *2 (S.D. Ind. Oct. 4, 2013); *Pettiford v. Hamilton*, No. 1:07-cv-675-DFH-TAB, 2008 WL 4083171, at *3 (S.D. Ind. Sept. 3, 2008) (same); *Jenkins v. Knight*, No. 1:13-cv-0099-TWP-MJD, 2013 WL 6229361, at *4 n.1 (S.D. Ind. Dec. 2, 2013) (same).

Page 11 - FINDINGS AND RECOMMENDATION

include a box with a checkmark next to OAR 291-109-0140(3)(h)——that is, the "rule not in existence at the time of exhaustion issue presented in *White*"——which precludes an inmate from grieving claims or issues that are the subject of a tort claim notice.[7] (*See* Vega Decl. Ex. 5 at 1.)  While Mills provided Plaintiff with a more definite explanation shortly thereafter, albeit outside the context of EOCI's formal grievance procedures, it still does not change the fact that Plaintiff was "informed that the [grievance] appeals process was unavailable to him," at least under the *White* rationale.

More persuasive is Defendants' argument that the Ninth Circuit's unpublished decision in *White* decision is contrary to the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006). There, the Supreme Court rejected an inmate's argument that the prison officials' rejection of his grievance as untimely meant that he had exhausted his administrative remedies, stating, among other things:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits). This Court has described the doctrine as follows: 'As a general rule courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice.' *Proper exhaustion demands compliance with an agency's deadlines*

---

[7] The copy of the notice of denial maintained by EOCI and provided to the Court by Defendants includes such a checkmark, however.  (Sobotta Decl. Attach. 9 at 1.)

Page 12 - FINDINGS AND RECOMMENDATION

> *and other critical procedural rules* because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Id*. at 90-91 (internal citation, quotation marks, brackets, and ellipses omitted) (emphasis added).

In addition to the procedural noncompliance described above, Plaintiff also failed to comply with EOCI's rule prohibiting an inmate from grieving claims or issues that are the subject of a tort claim notice. Contrary to the holding in *White*, that alone suggests that Plaintiff failed to properly exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (Roberts, C.J.,) ("In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself. . . . [T]he grievance procedures will vary from system to system and claim to claim, *but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion*.") (internal citation omitted) (emphasis added).

From this Court's perspective, the holding in *White* seems to be at odds with the fact that, under *Woodford*, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The holding in *White* also seems to be at odds with the two main purposes behind the doctrine of exhaustion of administration remedies: the first being the protection of administrative agency

Page 13 - FINDINGS AND RECOMMENDATION

authority by discouraging the disregard of the agency's procedures and providing the agency with an opportunity to correct its own mistake before being haled into federal court; and the second being the promotion of efficiency by having claims resolved more expeditiously and efficiently at the administrative level, where parties at times are convinced not to pursue the matter in federal court and a useful record can be produced for subsequent judicial consideration.  *See Woodford*, 548 U.S. at 89 (describing the two main purposes)

Moreover, the *White* court grounded its holding on the assumption that the Supreme Court would countenance the application of exceptions to the PLRA's exhaustion requirement. *See White*, 384 F. App'x at 561 (concluding that the inmate had been informed by prison officials that the grievance appeal process was "unavailable to him").  While the Ninth Circuit and some sister circuits have allowed exceptions to the PLRA's exhaustion requirement, *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010), the Supreme Court has not adopted the analysis that the PLRA exhaustion requirement incorporated exceptions to exhaustion contained in administrative law, *id.* at 1231 n.2 (Ikuta, J., dissenting); *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (Kozinski, C.J.) ("It is unclear whether we can read exceptions into the PLRA's exhaustion requirement.").  In fact, "a unanimous Supreme Court previously rejected this very idea, stating that 'we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirements where Congress has provided otherwise.'"  *Nunez*, 591

Page 14 - FINDINGS AND RECOMMENDATION

F.3d at 1231 n.2 (Ikuta, J., dissenting) (quoting *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)).[8]

Setting all of that aside, the Court would still conclude that Plaintiff failed to exhaust his administrative remedies under controlling Ninth Circuit precedent. In *Marella v. Terhune*, 568 F.3d 1024 (9th Cir. 2009) (per curiam), the Ninth Circuit concluded that the district court erred in dismissing the inmate's "complaint for failure to exhaust his administrative remedies beyond the second level of the prison appeals system because [he] had been informed that the appeals process was unavailable to him." *Id.* at 1027 (citing *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (stating that the PLRA "does not require exhaustion when no pertinent relief can be obtained through the internal process")). In fact, the inmate's grievance appeal response in *Marella* specifically indicated that the inmate "was not permitted to appeal the decision." *Id.*

Similarly, in *Harvey v. Jordan*, 605 F.3d 681 (9th Cir. 2010), prison officials granted a portion of the relief an inmate had requested by way of a grievance, "and informed him that he could appeal within fifteen working days if he was 'not satisfied' with that resolution." *Id.* at 685. After five months has passed without prison officials providing the agreed-upon relief, the

---

[8] *See also Thomas v. Joslin*, 524 F. App'x 107, 111 (5th Cir. 2013) ("The extent to which exceptions to the PLRA's exhaustion requirement survive [the Supreme Court's decision in] *Woodford* is unclear; *Woodford* explicitly declined to address the extent to which the failure to properly exhaust could be excused."); *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam) ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.").

Page 15 - FINDINGS AND RECOMMENDATION

inmate utilized an appeal form to air his complaints. *Id.* Prison officials construed the form as an untimely appeal of their prior decision and informed the inmate that the decision could "not be appealed." *Id.* On review, the Ninth Circuit rejected the defendants' argument that the inmate should have followed up with a second appeal in order to properly exhaust his administrative remedies because "[t]here is no obligation to appeal from a decision when the rejection form states that the 'action may not be appealed.'" *Id.* (citing *Marella*, 568 F.3d at 1027).

In both *Marella* and *Harvey*, unlike in the present case, the grievance appeal responses specifically stated that the decision or "screening" was not appealable. The response that was sent to Plaintiff by Sobotta did not include such language. (Vega Decl. Ex. 5 at 1; Sobotta Decl. Attach. 9 at 1.) And Plaintiff's subsequent actions indicate that he believed the decision was in fact appealable, as he sent an Inmate Communication Form requesting "that the attached grievance be allowed to be processed," challenging whether a "tort claim" should have "stop[ped] the issue from being grievable," and noting that he had actually filed a tort claim notice. (Vega Decl. Ex. 6 at 1.) As was the case with the filing of a tort claim notice, however, the submission of an Inmate Communication Form was not in conformance with EOCI's established grievance procedures.

In short, Defendants' motion for summary judgment should be granted because Plaintiff failed to properly exhaust his administrative remedies in multiple respects. *See Randall v. DiGiulio*, No. 3:12-cv-02277-HU, 2013 WL 6498759, at *3 (D. Or. Dec. 9, 2013) ("While plaintiff was unable to appeal his grievances

Page 16 - FINDINGS AND RECOMMENDATION

because they were returned because he filed a tort claim, this does not excuse his failure to exhaust administrative remedies."); *see also Marella*, 568 F.3d at 1028 ("If a prisoner had full opportunity and ability to file a grievance [in accordance with the prison's procedures], but failed to do so, he has not properly exhausted his administrative remedies."); *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (effective unavailability requires an inmate to establish "that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.").

The Court recommends dismissing Plaintiff's complaint with prejudice. *See Loos v. Or. Dep't of Corr.*, No. 3:11-cv-00208-BR, 2012 WL 385385, at *5 (D. Or. Feb. 6, 2012) ("[I]t is apparent that Plaintiff is now time-barred from exhausting his administrative remedies, and, therefore, it does not 'make sense' to dismiss this matter without prejudice.").

### IV. CONCLUSION

For the reasons stated, the Court recommends granting Defendants' now-Rule 56 motion (Docket No. 25) for summary judgment and dismissing Plaintiff's complaint with prejudice.

### V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **December 22, 2014.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **January 8, 2015.** When the response is due or

Page 17 - FINDINGS AND RECOMMENDATION

filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  3rd  day of December, 2014.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION