IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**NICKOLAS ALONZO VEGA**,

        Plaintiff,

   v.

**MR. BELL, et al.,**

        Defendants.

No. 2:13-cv-00931-HU

OPINION AND ORDER

**MOSMAN, J.**,

## INTRODUCTION

Plaintiff Nickolas Alonzo Vega is an inmate in the custody of the Oregon Department of Corrections ("ODOC") who filed this pro se civil rights action under 42 U.S.C. § 1983. Mr. Vega claims prison officials violated his rights under the First and Eighth Amendments of the U.S. Constitution. His complaint names multiple Defendants, all former employees at Eastern Oregon Correctional Institution ("EOCI"), the institution at which he was held.

Defendants moved for dismissal, arguing that Mr. Vega failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Although Mr. Vega filed an initial grievance and a first level appeal, the appeals process was cut short by operation of law when Mr. Vega filed a Notice of Tort Claim with the State Department of Administrative Services. Accordingly, Mr. Vega's grievance appeal was returned to him without being considered on the merits. He then filed this suit. Mr. Vega argues that either this constitutes exhaustion because there was no more process left for him to utilize, or that his failure should be excused because his appeal was "thwarted" by ODOC.

Judge Hubel concluded that Mr. Vega had failed to properly exhaust his administrative remedies and recommended that Defendants' motion be granted. For the reasons explained below, I agree. I write further to address Mr. Vega's objections.

## BACKGROUND

The facts relevant to this motion are largely undisputed. Mr. Vega's complaint alleges the following: On October 23, 2012, Mr. Vega was assigned a new cellmate whom he believed had a reputation for sexually assaulting other inmates. Mr. Vega sent an inmate communication to EOCI Superintendent Coursey, one of the Defendants, saying he was concerned for his safety and asking to have the other man moved elsewhere. The next day, Mr. Vega was moved to housing unit F3, which he says is "known to be a less safe unit." (Plf.'s Compl. [2] at 3.) Once there, Mr. Vega "became aware of threats to [his] personal safety" and was "repeatedly threatened" by other inmates. *Id.* He spoke with various prison staff about this, notifying them of the threats and requesting a move to another housing unit. Mr. Vega says these pleas were ignored, and this led to his assault by another inmate on February 12, 2013, in which his nose was broken. Mr. Vega claims his move to the F3 unit was retaliatory in violation of the First Amendment, and that Defendants' failure to protect him was a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

Mr. Vega then began the prison grievance process. Pursuant to ODOC regulations, this is a three-level procedure consisting of the initial grievance and two levels of appeal. On February 19, 2013, Mr. Vega filed his initial grievance form with the EOCI Grievance Coordinator, Defendant Sobotta, outlining his allegations that he had warned prison staff about the threats to his safety and was then assaulted.[1] On March 14, 2013, Lieutenant Walker, another named Defendant, responded to the grievance, explaining that Mr. Vega had been moved to the F3 unit due to a doctor's order that he needed a bottom bunk, and denying that Mr. Vega had spoken to him about threats to his safety.

Mr. Vega then had fourteen days to appeal Defendant Walker's response to the "functional unit manager." OAR 291-109-0170(1)(b). He complied with this deadline, and on March 24, 2013, his grievance appeal was forwarded to Assistant Superintendent of Security Lemens. No further action was taken on the appeal until April 10, 2013, when it was formally "accepted" and Mr. Vega was given notice of the acceptance.

Mr. Vega makes much of this seventeen day delay. He alleges that while "[i]t may not be procedure[,] it is at least customary that a person receive a receipt of complaint in a timely manner." (Vega Dec. [43] at 2.) After not getting the expected receipt for more than two weeks, on April 8, 2013, Mr. Vega filed a Tort Claim Notice with the Oregon Department of Administrative Services.[2] Pursuant to grievance regulations, this cut off his appeal process.[3] When Ms. Sobotta learned the notice had been filed, she changed the status of Mr. Vega's grievance to "denied," and informed him of the reason for the denial.

---

[1] While Mr. Vega's grievance only includes the conduct that would support his Eighth Amendment claim, Defendants did not contest the adequacy of the grievance in relation to the First Amendment. (*See* Defs.' Mem. Supp. Mot. Dismiss at 7 n.2.) I therefore consider both the First and Eighth Amendment claims.
[2] Although Mr. Vega's Declaration states that his notice was filed on or about April 8, it is *dated* March 3, 2012, eleven days before he even received a response to his initial grievance.
[3] The Oregon Administrative Rules in force at the time state that "[a]n inmate cannot grieve . . . [c]laims or issues for which the inmate has filed a Notice of Tort with the Oregon Department of Administrative Services, Risk Management Division[.]" OAR 291-109-0140(3)(h). Further, OAR 291-109-0160(4) states that, "If at anytime the grievance coordinator determines the inmate has pursued his/her issue through state or federal courts, *or has filed a notice of tort claim*, the grievance process will cease and the grievance will be returned to the inmate." *Id.* (emphasis added).

On May 8, 2013, Mr. Vega sent an inmate communication form to Assistant Superintendent Amsberry stating his belief that he had not filed "an actual Tort Claim" and asking that his grievance be allowed to proceed. (Vega Dec. [43] at 2, Ex. 6.) Defendant R. Miles, Supervising Executive Assistant to the Superintendent, responded the next day, telling Mr. Vega that, "[y]our statement that you did not file a Tort claim is false." (Vega Dec. [43] at 2, Ex. 7.) Defendant Miles included the applicable language from OAR 291-109-0140(3)(h), and determined that the grievance was "appropriately denied." *Id.*

Mr. Vega then filed this suit under 42 U.S.C. § 1983. I granted his motion to proceed *in forma pauperis* and screened his complaint under 42 U.S.C. § 1915(e)(2)(B), dismissing his Fourteenth Amendment claim in its entirety and dismissing six Defendants with respect to the remaining claim under the First and Eighth Amendment.

Defendants moved for dismissal on the grounds that Mr. Vega had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), an "unenumerated" Rule 12(b) motion under *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). While the motion was pending, the Ninth Circuit issued *Albino v. Baca*, 747 F.3d 1162 1166–68 (9th Cir. 2014), overruling *Wyatt* and holding that failure to exhaust motions should be considered under the existing rules of civil procedure rather than unenumerated ones. *Id.* at 1166. Because Defendants' motion included evidence beyond the pleadings, Magistrate Judge Hubel construed it as one for summary judgment under Rule 56. (F&R [48] at 3.) He determined that it should be granted and recommended that Mr. Vega's remaining claim be dismissed with prejudice. *Id.* at 17. Mr. Vega filed timely objections.

## DISCUSSION

### I.    Legal Standards

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to

make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

Summary judgment is appropriate if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The burden is on the party seeking summary judgment to show that there is no genuine dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party, as well as draw all reasonable inferences in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Furthermore, the court construes pro se pleadings liberally and affords pro se plaintiffs the benefit of any doubt.  *See Erikson v. Pardus*, 551 U.S. 89, 94 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all available administrative remedies prior to filing a complaint under § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion must also be "proper," meaning the "grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). The rules governing exhaustion are defined by the prison grievance process itself. *See*

*Jones v. Bock*, 549 U.S. 199, 218 (2007). In this case, those rules are contained in OAR sections 291-109-0100 through 0190.[4]

Ultimately, failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden of proof. *Jones*, 549 U.S. at 212. Viewing all the evidence in the light most favorable to Mr. Vega, I conclude Defendants have carried that burden.

## II.    <u>Analysis</u>

This case falls between well established principles. On one hand, if an inmate proceeds directly to court without utilizing an available grievance procedure, as did the plaintiff in *Porter*, he has obviously failed to exhaust his administrative remedies. *Porter*, 534 U.S. at 519–20. Likewise, where a plaintiff fails to comply with deadlines or procedural rules governing grievances, so that his own failure causes remedies to become "unavailable," the mistake is laid at his feet, and it is said that exhaustion was not "proper." *See Woodford*, 548 U.S. at 89–91 (holding that an untimely grievance was not proper exhaustion); *Harvey v. Jordan*, 605 F.3d 681, 684 (9th Cir. 2010) (holding failure to file a grievance within fifteen day period mandated by prison rules constituted failure to properly exhaust); *Byrd v. Lynn*, No. 2:10-cv-0839, 2013 WL 5755055 (E.D. Cal. Oct. 23, 2013) (where inmate failed to attach supporting documents necessary under state grievance procedure, inmate's grievance appeals were rightly dismissed).

On the other hand, if the correctional institution makes a mistake or takes other action that causes the inmates administrative remedies to become effectively unavailable, non-exhaustion may be excused. In *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010), a divided panel of the Ninth Circuit held that a prisoner's failure to exhaust was excused where he took "reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake." *Id.* at 1224.

---

[4] The Ninth Circuit recently filed its opinion in *Williams v. Paramo*, No. 13-56004, 2015 WL 74144 (9th Cir. Jan. 7, 2015). While neither party has argued the burden shifting framework should apply here, I have considered it and conclude it would not alter the outcome of this case.

In *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010) the court clarified this test. It held that failure to exhaust will be excused where the inmate "attempted to exhaust his administrative remedies but was thwarted by improper screening." *Id.* at 823. This requires the inmate to establish that: (1) he "actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823–24.[5]

### A.    *Mr. Vega failed to properly exhaust his remedies.*

In light of these principles, I turn to the facts of the case. Defendants admit that Mr. Vega filed his initial grievance and the first level appeal. Mr. Vega admits that "on or about April 8th [he] filed a 'Notice of Tort Claim.'" (Vega Dec. [43] at 2.) Under the OARs in force at the time, this act unmistakably short-circuits the grievance procedure. The rules governing grievances clearly state that, "[a]n inmate cannot grieve . . . [c]laims or issues for which the inmate has filed a Notice of Tort with the Oregon Department of Administrative Services, Risk Management Division[.]" OAR 291-109-0140(3)(h) (effective Mar. 1, 2011). "If at any time the grievance coordinator determines the inmate has pursued his/her issue through state or federal courts, *or has filed a notice of tort claim*, the grievance process will cease and the grievance will be returned to the inmate." OAR 291-109-0160(4) (effective Mar. 1, 2011) (emphasis added).

Nor does Mr. Vega dispute the fact that his appeal was denied *because* he filed the tort claim notice. Rather, Mr. Vega focuses on the fact that he filed a tort claim *notice*, rather than an

---

[5] The *Sapp v. Kimbrell* court gave several examples from out of circuit cases that illustrate this principle. *See Sapp*, 623 F.3d at 822–23 (citing *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (holding "a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement); *Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (stating that failure to exhaust will be excused "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (holding exhaustion not required where prison officials refused to give a prisoner the forms necessary to file a proper appeal); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001) (same); *Brown v. Croak*, 312 F.3d 109, 111–12 (3d Cir. 2002) (excusing exhaustion where guards wrongly told an inmate he had to wait for an investigation to be completed before he could pursue a grievance)). The gravamen of those cases is that institutional mistake or affirmative misconduct will excuse proper exhaustion—not that exhaustion has been achieved simply because an inmate is told no more process is available.

actual tort *lawsuit*, and argues his belief that the former "shouldn't stop the issue from being grievable." (Vega Dec. [43] Ex. 6.) As was already explained, Mr. Vega's belief is wrong. Whether he filed a tort claim notice or an actual lawsuit makes no difference in this regard. Under the rules, both acts have the same effect of cutting off the grievance process, just as missing a deadline or failing to comply with other procedural rules would.  Mr. Vega's grievance appeal was appropriately denied.

Mr. Vega objects particularly to language beginning on page nine of Judge Hubel's F&R [48]. In this section, Judge Hubel concludes that Mr. Vega failed to exhaust because he sent an inmate communication form to Ms. Amsberry rather than a second level appeal using the grievance appeal form. Mr. Vega notes, and Defendants agree, that ODOC would not have accepted a second appeal of Plaintiff's grievance after it was returned to him. This is because OAR 291-109-0160(5) states that a "grievance that has been returned to the inmate . . . for procedural reasons cannot be appealed." Therefore, I agree with these objections and modify the F&R accordingly.

Mr. Vega also argues that an unpublished memorandum opinion, *White v. Hall*, 384 F. App'x 560 (9th Cir. 2010), supports his position. Like Mr. Vega, inmate White's grievance was rejected because he filed a tort claim notice. The critical difference, however, is that in *White*, ODOC was operating under an old version of the OARs which said *nothing* about tort claim notices causing the grievance procedure to cease.[6] The institution nonetheless applied the rule before it had even been officially proposed, let alone finalized. Defendants correctly point out that *White* therefore dealt with the institution's misapplication of a rule. That is not the case here.

In view of all the facts, I conclude that Mr. Vega's exhaustion was not "proper" under *Woodford* and *Griffin* because he did not "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119. "Proper exhaustion demands

---

[6] At the time relevant to *White*, OAR 291-109-0160(4) (2006) stated only that "if the grievance coordinator determines that the inmate has pursued his his/her issue through state or federal courts, the grievance process will cease." The language adding tort claim notices to the rules was officially proposed on November 1, 2010, and went into effect in March 1, 2011.

compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 548 U.S. at 90. Because Mr. Vega did not comply with a critical procedural rule—completing the grievance procedure *before* filing a tort claim notice—he failed to properly exhaust his administrative remedies under §1997e(a).[7]

### B.    Should Mr. Vega's failure be excused?

Even giving Mr. Vega the benefit of his accusations and assuming that the delay in responding to his grievance was unusual, he does not allege facts that would warrant an exception to the exhaustion requirement.

First, Mr. Vega repeatedly recites his allegation that he attempted to utilize the prison grievance procedure, but that Ms. Sobotta "thwarted" these attempts and "obstructed [him] from fully exhausting [his] remedies." (Plf.'s Mem. in Opp'n of Summ. J. [42] at 1, 3.) Even viewing the facts in the light most favorable to Mr. Vega, the evidence does not support his allegation because there are no facts in the record which would indicate the denial of his grievance was improper.

Quite to the contrary, it is undisputed that Ms. Sobotta changed the status of Mr. Vega's grievance appeal to "denied" only after she learned about his tort claim notice. As I explained above, this was a valid and appropriate response, required of her by law. Mr. Vega has not alleged the sort of wrongful conduct by corrections officials that would warrant excusing exhaustion under *Sapp v. Kimbrell*, because nothing indicates "that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." 623 F.3d at 823–24.

Second, even assuming the delayed response to his first appeal was unusual, the grievance rules speak on this issue. The rules governing the general processing of inmate

---

[7] As Judge Hubel noted, I have agreed with this conclusion before. In *Ippolito v. DeCamp*, No. 3:11-CV-676-PK, 2013 WL 1636078 (D. Or. Mar. 25, 2013), Judge Papak rejected the argument that "avoiding grievance procedures by filing a notice of tort claim can under any circumstances constitute exhaustion of administrative remedies." *Id.* at *5. I agreed, and adopted his F&R as my own opinion. *See* 2013 WL 1628902, at *1 (D. Or. Apr. 16, 2013). Judge King came to a similar conclusion in *Voth v. Premo*, No. 6:14-CV-00128KI, 2014 WL 3513372, at *2 (D. Or. July 10, 2014), rejecting an inmate's claim that filing a tort claim notice was sufficient exhaustion.

grievances state that "[i]f the inmate does not receive a response within the allotted time frame, he/she may contact the grievance coordinator." OAR 291-109-0160(2). The allotted time frame for grievance appeals state that "[a]fter the appeal has been date stamped and logged, the inmate will be issued a return receipt" and that "[t]he functional unit manager shall respond to the inmate's grievance appeal within 30 calendar days." OAR 291-109-0170(1)(a)–(b). There is nothing in the rules indicating a seventeen day delay would void the entire process, or that immediately filing a tort claim notice is the appropriate response to such a delay.

Under the Oregon Tort Claims Act, Mr. Vega had 180 days from the date of the assault to file his tort claim notice. ORS 30.275. Given this deadline, Mr. Vega should have had time to proceed properly through the entire grievance appeal process before filing his notice. Had the prison officials delayed to the point where the statute of limitations was imminent, Mr. Vega's filing would likely be excused. *See Dole v. Chandler*, *supra* note 5.  But that was not the case. Here, Mr. Vega filed his notice less than sixty days after the incident, 120 days before his tort claim notice was due. Ultimately, it appears that Mr. Vega was simply mistaken about the legal effect of his tort claim notice, and unaware that it would cut off the grievance procedure. This is not enough to excuse his error.

The Supreme Court acknowledged in *Woodford* that the exhaustion requirement is often harsh, but noted that it "creates an incentive for these parties to do what they would prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." 548 U.S. at 90, 103.

## CONCLUSION

Defendants' motion for summary judgment [25] is GRANTED.  Mr. Vega's remaining claim is DISMISSED with prejudice.

DATED this  29  day of January, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge